Next case on today's docket is the case of People of the State of Illinois v. Byron Blake. We have Amanda Horner for the appellant, and we have Whitney Atkins for the appellee. So, Ms. Horner, you may proceed. May it please the Court, my name is Amanda Horner, and I represent the defendant, Mr. Byron Blake. Your Honors, according to the Illinois Supreme Court in People v. Korea, counsel is ineffective when he misadvises a client about a collateral consequence, such as good conduct credit. Here, Mr. Blake pled guilty to a sentence that he had to serve at 85%. Counsel misadvised Mr. Blake that he could further reduce this sentence by using good conduct credit. Therefore, counsel is ineffective. Further, Mr. Blake was prejudiced by this misadvice because he would not have entered the guilty plea had he known he would have had to serve more time. Now, this Court does not have to find that counsel was ineffective because this is a first-stage petition. Mr. Blake was only required to raise the gist of a constitutional claim that he was denied effective assistance of counsel. Here, under People v. Korea, he has met that burden. Further, nothing in the record contradicts his assertions in his petition. The trial court advised him that this sentence was to be served at 85%. Defense counsel on the record referred to it as an 85%er. No one discussed that this was the minimum that he would have to serve, and the record is completely void on any discussion of whether or not good conduct credit could be used to reduce this 85% sentence. Well, the judge told him you have to serve 85%. The judge told him specifically this is an 85% sentence. Now, based on advice of counsel, who said it was an 85% sentence but it could be reduced by good conduct credit, Mr. Blake reasonably believed that he would serve 85% and then he would be entitled to additional good conduct credit, assuming he earned that credit. And again, he only had to raise the gist of a constitutional claim here, and based on the misadvice of his attorney, he has met that burden, and the trial court improperly dismissed this petition. Second, Your Honor, the trial court also improperly held Mr. Blake to a higher standard. The trial court required Mr. Blake to make a substantial showing of a constitutional violation. Since this is a first-stage petition, Mr. Blake only had to show the gist of a constitutional claim, and therefore the trial court improperly dismissed the petition. Your Honor, the state also makes the argument in its brief that Mr. Blake did not comply with the Post-Conviction Petition Act because he failed to attach an affidavit to his petition. However, it's clear from the record that on page 193, Mr. Blake did in fact affix an affidavit to the bottom of his petition. He swore that the facts were true and it was notarized. Therefore, there is no other independent basis for dismissing this petition. Therefore, Mr. Blake respectfully requests that this court reverse and remand his case for second-stage proceedings. Thank you, Ms. Horner, and you'll have the opportunity for rebuttal in a second. May it please the Court, Ms. Horner? Defendants' post-conviction petition allegations for ineffective assistance of counsel were rebutted by the record and thus are patently meritless. The record shows that the defendant was fully aware that he was required to serve 85% of his sentence at the time he pled guilty. First, the court admonished the defendant several times that he would have to serve 85% of his sentence. The court did not solely state that this is an 85% sentence. The court said you have to serve 85% of your sentence. Then, the defendant actually testified that he knew he was required to serve 85% of his sentence at the time he entered the guilty plea. The defendant entered a plea agreement where he agreed to plead guilty to aggravated battery with a firearm. He subsequently moved to withdraw his guilty plea. At the hearing on the defendant's motion to withdraw his guilty plea, post-plea counsel questioned the defendant about the occurrences and discussions with his trial counsel that led him to enter the plea agreement. In this direct examination, the defendant basically recounted nearly every discussion he had with his trial counsel that led him to agree to this plea agreement. He then concluded the direct examination by specifically asking the defendant, did you understand that you were required to serve 85% of your sentence? That testimony is as follows. You knew it would be at 85%? Yes, sir. No doubt in your mind about that. You had various times to meet with Mr. Rakowski and went over some of your discovery. Answer, yes, sir. He was specifically asked if he understood that he was to serve 85% of his sentence. Despite what the defendant says, 85% is 85%. This testimony, coupled with the admonishments from the court, contradicts any argument defendant now makes on appeal that he believed he could serve less than 85% of his sentence. Furthermore, the defendant's post-conviction petition required dismissal on the basis that it did not meet the basic requirement of the Post-Conviction Hearing Act, that is Section 122-2. This portion of the Post-Conviction Hearing Act requires a defendant to attach to their petition an affidavit or other evidence to support their allegations or explain why these items are not attached. The failure to comply with this section of the Post-Conviction Hearing Act alone justifies dismissal of the petition. And the purpose of this section is to independently cooperate the defendant's allegations. Now the defendant is arguing that the petition alone suffices this requirement. But as the Illinois Supreme Court has held, the defendant's sworn verification is not a substitute for the Section 122-2 requirement. And that's because the sworn verification serves the purpose of establishing that the defendant has brought their allegations in good faith and honestly. Whereas the attachment of supporting evidence serves the purpose of ensuring that the allegations can be independently cooperated. And the defendant has provided no evidence that the trial counsel misled them. The defendant further argues that in addition to his post-conviction petition being improperly dismissed, the wrong standards were applied in dismissing it. But it's well-settled law that the trial court's judgment is on review, not its reasoning. This court can affirm the trial court below on any basis that can be found in the record. And the record shows that the defendant's allegations are rebutted by it. He has offered no evidence that his trial counsel has misled him. He testified that he understood it was 85%. And the court on several occasions admonished him that he was required to serve 85%, not just that it was an 85% sentence as the defendant serves. Accordingly, this court should affirm the trial court's decision below dismissing defendant's post-conviction petition. Thank you. Thank you, Ms. Adkins. Ms. Horner. Your Honors, the record shows that Mr. Blake was told that this was an 85% sentence. The state misunderstands Mr. Blake's argument. His petition alleges that the trial court told him it was an 85% sentence. I believe the exact words were, in this charge, you have to serve 85% of the sentence. What the trial court didn't tell him, and what the record is absolutely devoid of, is that this 85% already included the most good conduct credit that he was allowed to earn. And in his petition… But, Lois, what does it mean when the judge says you have to serve 85% of the sentence? Well, it means he has to serve 85%. And if that alone is all that's on the record, then he would be required to serve 85%. He wouldn't have raised it just as a constitutional claim. But here, in his petition, he specifically alleges that trial counsel informed defendant that under the terms of the plea agreement, he would be eligible for release after serving 85% of the sentence, which is in line with what the trial court told him. And then defendant asked trial counsel if he would be eligible for additional good conduct credits, and whether those credits would be awarded towards what was an 85% sentence. And counsel advised him that he could earn those additional credits. Mr. Blake relied on the advice of counsel. Further, Mr. Blake did testify at his post-sentencing hearing that he understood it was an 85% sentence. Do you understand it's an 85% sentence? Yes. That had nothing to do with the good conduct credit that he's alleging counsel advised him he was entitled to. Further, the petition alleges that he told his post-plea counsel that he wanted this brought up in his post-sentencing hearing, but post-plea counsel refused to do that. Post-plea counsel didn't ask him any questions regarding good conduct credit. And at this stage, if we assume that all facts are true, Mr. Blake understood it was an 85% sentence, but because of the misadvice of counsel, he understood that he could further reduce that sentence with good conduct credit. Is good conduct credit part of the sentence? No, it's not. Isn't that a problem? No, it's not. Normally, it's a collateral consequence, and so that would not change his plea agreement. But under People v. Korea, while an attorney may not have a duty to affirmatively advise a client about good conduct credit or other collateral consequences in Korea with immigration status, if a counsel does advise about a collateral consequence, that advice has to be correct. Because a client asks a question, and if a counsel gives information, that client is going to rely on that information. Therefore, based on the petition, Mr. Blake adequately explains why his belief that he could reduce that 85% sentence was reasonable. Finally, the State contends that Mr. Blake should have submitted some other affidavit, but according to the petition, there were only two people there in this conversation regarding good conduct credit, Mr. Blake and counsel. Now, the court could hardly expect him to attach an affidavit from counsel alleging that counsel was ineffective. Therefore, the only affidavit that Mr. Blake could submit in this particular case was his own. And therefore, that is not a basis for dismissing this petition either. Thank you. Thank you, Ms. Horner and Ms. Atkins, for your briefs and arguments, and we'll take the matter under advice.